No. 24-3043

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

KENYA WATKINS,
Plaintiff-Appellant,

v.

GENESH, INC. d/b/a BURGER KING,
Defendant-Appellee

---

**APPELLANT'S BRIEF**

---

Appeal from the Unites States District Court for the District of Kansas
(United States District Court Case No. 2:22-CV-02273)
The Honorable Kathryn H. Vratil, United States District Judge

---

Respectfully submitted,

Aaron C. McKee, KS # 20889
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400, Fax: (913) 768-6420
aaronmckee@ksmoemploymentlaw.com

ATTORNEY FOR APPELLANT

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

PRIOR OR RELATED APPEALS..........................................................................iii

STATEMENT OF THE ISSUES...........................................................................1

    I.    Whether The trial court erred in finding that Appellant had not timely filed her lawsuit...............................................................................................1

    II.    Whether Appellant's lawsuit filed on August 19, 2019 based on Section 1981 filed in an earlier lawsuit bars her Title VII claims in the current lawsuit....1

STATEMENT OF THE CASE AND FACTS ........................................................1

STANDARD OF REVIEW .................................................................................4

SUMMARY OF THE ARGUMENT ....................................................................5

ARGUMENTS AND AUTHORITIES .................................................................9

    ISSUE I:    Whether the trial court erred in finding that Appellant had not timely filed her lawsuit...........................................................................................9

    A.    Appellant did not attempt to resurrect her 2016 Charge by filing her 2019 Charge. ...............................................................................................13

    B.    Appellant's 2016 Charge and 2019 Charge were not based on "*exactly the same facts*". ....................................................................................14

    ISSUE II:    Whether Appellant's lawsuit filed on August 19, 2019 based on Section 1981 filed in an earlier lawsuit bars her Title VII claims in the current lawsuit.    16

CONCLUSION .................................................................................................20

STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT ............21

CERTIFICATE OF COMPLIANCE...................................................................22

CERTIFICATE OF SERVICE ..........................................................................23

JUDGMENT (ECF 31) .....................................................................................24

MEMORANDUM AND ORDER (ECF 30)........................................................25

MEMORANDUM AND ORDER: Case No. 2:19-CV-2486-JAR-GEB ...............47

## TABLE OF AUTHORITIES

**Cases**

*Apsley v. Boeing Co.*, 691 F.3d 1184 (10th Cir. 2012) .......................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................ 5

*Bond v. Wormuth*, 22-5019, 8 (10th Cir. Dec 14, 2022) ...................................... 10

*Brown v. Unified Sch. Dist. No. 501*, 465 F.3d 1184 (10th Cir. 2006) (*Brown II*) . 6, 7, 11, 12, 14

*Brown v. Unified Sch. Dist. No. 501*, Case No. 17-cv-2390-JWL (D. Kan. Oct 19, 2018) (*Brown IV*) ............................................................. 9, 17, 18, 19

*Campbell v. Dep't of Human Serv.*, 780 N.W.2d 586 (Mich. Ct. App. 2009) ....... 13

*Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191 (10th Cir. 2004) .............................. 11

*Garg v. Macomb Cty. Cmty. Health Serv.*, 696 N.W.2d 646 (Mich. 2005) ........... 13

*Green v. Brennan*, 578 U.S. 547 (2016) .................................................................. 10

*Hickey v. Brennan*, 969 F.3d 1113 (10th Cir. 2020) ............................................. 10

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017) ................................................................................................................ 17

*Lister v. City of Wichita*, No. 16-3229 (10th Cir. Nov 15, 2016) ........................ 11

*Marotta v. Ford Motor Co.*, Case No. 14-CV-11149 (E.D. Mich. Sep 14, 2015). 13

*Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003) ........................................ 10, 11

*Moss v. Kopp*, 559 F.3d 1155 (10th Cir. 2009) ................................................... 9, 17

*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) . 11, 12

*Nwosun v. Gen. Mills Rest.*, 124 F.3d 1255 (10th Cir. 1997) ............................... 17

*Palmer v. Pentair*, Case No. 18-02638-CM-TJJ (D. Kan. Jul 18, 2019)............... 12

*Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387 (1st Cir. 2014) .. 12

*Rohwedder v. Rocky Mountain Pies*, LLC, 21-4096, 3 (10th Cir. Nov 23, 2021)... 5

*Sandella v. Missouri*, 210 F.3d 850 (8th Cir. 2000) ............................................. 12

*Satsky v. Paramount Comm., Inc.*, 7 F.3d 1464 (10th Cir. 1993).......................... 17

*Shikles v. Sprint/United Mgmt. Co.*,426 F.3d 1304 (10th Cir. 2005) ................... 11

*Smith v. Cheyenne Ret. Investors L.P.*, 904 F.3d 1159 (10th Cir. 2018) .............. 10

*Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827 (2nd Cir. 1986). 7, 8, 12, 15

*Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) ......................................... 5

*Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1266 (10th Cir. 2020)........................ 5

*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977) ........................................... 13

*United States v. Osage Wind, LLC*, 871 F.3d 1078 (10th Cir. 2017) ............. 18, 19

*Wilkes v. Wyoming Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501 (10th Cir. 2002)........................................................................................................ 17

**Statutes**

28 U.S.C. § 1291 .................................................................................................. 1
28 U.S.C. § 1331 .................................................................................................. 1
28 U.S.C. § 1367 .................................................................................................. 1
28 U.S.C. § 1391 .................................................................................................. 1
42 U.S.C. § 1981 ................................................................................................ 18
42 U.S.C. § 2000e ........................................................................................... 1, 11
Kan. Stat. § 44-1005(i) ...................................................................................... 11
Mich. Comp. Laws § 600.5805 (2009) ............................................................. 13

## PRIOR OR RELATED APPEALS

None.

## STATEMENT OF JURISDICTION

Jurisdiction of the district court was invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1391. The action was authorized and instituted pursuant to Title VII. 42 U.S.C. § 2000e, *et. seq*.

The trial court's Order granting Defendant's Motion to Dismiss entered on February 9, 2024, and Judgment entered on February 9, 2024, constitute final decisions that give this Court jurisdiction to review pursuant to 28 U.S.C. § 1291. [A.V. 173; 151-172]. Appellant Kenya Watkins timely filed her Notice of Appeal on March 11, 2024. [A.V. 174].

## STATEMENT OF THE ISSUES

I.    Whether The trial court erred in finding that Appellant had not timely filed her lawsuit.

II.   Whether Appellant's lawsuit filed on August 19, 2019 based on Section 1981 filed in an earlier lawsuit bars her Title VII claims in the current lawsuit.

## STATEMENT OF THE CASE AND FACTS

In 2014 and 2015, Appellant worked for Defendant, Genesh d/b/a Burger King ("Burger King"). Defendant's General Manager repeatedly sexually harassed Appellant. Appellant complained about the General Manager's behavior. On or about August 23, 2015, Defendant terminated Appellant's employment. [A.V. 166-170].

On January 25, 2016, Appellant filed her first Charge with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC") ("2016 Charge). [A.V. 166-170]. Appellant's 2016 charge was based upon acts that occurred in 2014 and 2015 while Appellant was working for Burger King, and, also,

her termination by Burger King. [A.V. 166-170]. Her 2016 Charge was assigned case number 28D-2016-00190. [A.V. 166-170].

In December 2018, Appellant was working at a subsequent employer, Cajun Operating Company d/b/a Church's Chicken ("Church's"). In December 2018, a representative from Burger King called Church's. Burger King's representative asked Appellant what she wanted (presumably for filing her first charge). [A.V. 161]. Appellant further alleged that the owner of Burger King and the owner of Church's were friends and that they discussed Appellant and her claims against Burger King. [A.V. 161]. On or about July 23, 2019, Appellant dually filed a second charge of discrimination against Burger King based on her allegations in December 2018 while she was working for Church's. [A.V. 159-163].

On July 23, 2019, Appellant filed her second Charge ("2019 Charge"). [A.V.159-163]. Appellant's 2019 charge was based upon acts that occurred in December 2018 – *three (3) years after her 2016 Charge* – while Appellant was working for a subsequent employer, Cajun Operating Company d/b/a Church's Chicken ("Church's"), and, also, her termination by Church's. [A.V. 161]. More specifically, Appellant alleged that Church's terminated her employment in December 2018 after it was contacted by Appellee and told Church's about her prior complaints. [A.V. 161]. Her 2019 Charge was assigned case number 563-2019-02638. [A.V. 159]. As part of her 2019 Charge, Appellant included and referred to her allegations from her 2016 Charge. Appellant's 2019 Charge specifically stated, among other things, that:

2

By contacting my current employer and making defaming comments, Respondent is continuing to retaliate against me *__because of my complaints of discrimination, harassment, and retaliation and because I filed a Charge of Discrimination against them with the KHRC__*.

[A.V. 161 (emphasis added)].

On or about August 19, 2019, Appellant filed a lawsuit alleging that Appellee violated 1981 by racially discriminating and retaliating against Appellant. The statute of limitations for her 1981 claim was about to expire. Appellant's 1981 claims were assigned to Judge Robinson. On April 2, 2021, Judge Robinson granted Appellee's Motion to Dismiss her race claims. [A.V. 96-103]. During that time, Appellant's 2016 Charge and 2019 Charge were pending in the EEOC.

Judge Robinson specifically preserved Appellant's Title VII claims that were pending in the EEOC.

In footnote 23 of her Order, Judge Robinson specifically stated:

The Court notes that Watkins stated in her Motion for Leave to Amend the Complaint, filed June 15, 2020, that she has *__charges pending with the EEOC__*. Doc. 24 at 2. She asserts that a right to sue letter was issued but then rescinded, and that as a result, she has been *__unable to file her Title VII claims__*. *Id*. The Court will not delay ruling on Burger King's motion to dismiss in this § 1981 case, which has been pending since August 19, 2019. *__Once the KHRC/EEOC's proceedings conclude, Watkins can file her claims for sexual discrimination and/or harassment under Title VII__*.

[A.V. 102 FN23 (emphasis added)].

On July 12, 2021, the Notice of Right to Sue Letter for Appellant's 2019 charge was issued by the EEOC for charge number 563-2019-02638 ("2021 RTS") (collectively "2019 Charge/2021 RTS"). [A.V. 164-165]. Appellant chose not to file a lawsuit regarding her 2021 RTS letter because her 2016 Charge for her allegations in 2014 and

2015 while working for Burger King were still pending in the EEOC.

On April 26, 2022, the EEOC issued a Conciliation Failure and Notice of Right to Sue Letter ("2022 RTS") (collectively "2016 Charge/2022 RTS"). [A.V. 171-172]. The 2022 RTS letter was specifically for case number 28D-2016-00190. [A.V. 171-172].

On July 14, 2022, 79 days after receiving her 2022 RTS letter in case number 28D-2016-00190, Appellant filed her lawsuit based on her 2022 RTS letter. [A.V. 1-94]. Appellee filed a Motion to Dismiss. [A.V. 45-139]. The trial court dismissed Appellant's lawsuit finding that Appellant had not filed her lawsuit within 90 days of the 2021 RTS letter (involving Church's) [A.V. 151-172].

Here, Appellant filed two (2) charges of discrimination. The following chart summarizes the applicable dates for Appellant's first and second charges:

| | 1st Charge ("2016 Charge") | 2nd Charge ("2019 Charge") |
|---|---|---|
| **Charge Number** | 28D-2016-00190[1] | 563-2019-02638[2] |
| **Date Charge Filed** | January 25, 2016 | July 23, 2019 |
| **Event Dates** | 2015 and 2016 | December 2018 |
| **Employer** | Defendant | Church's Chicken |
| **Date of RTS Letter** | April 26, 2022[3] | July 12, 2021[4] |

## STANDARD OF REVIEW

The Tenth Circuit reviews de novo a district court's dismissal of a Complaint for failure to state a claim under dismissal of a complaint under Federal Rule of Civil

---

[1] A.V. 166-170.
[2] A.V. 159-163.
[3] A.V. 171-172.
[4] A.V. 164-165.

Procedure 12(b)(6). *See Rohwedder v. Rocky Mountain Pies*, LLC, 21-4096, 3 (10th Cir.

Nov 23, 2021) (citing *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Strauss*

*v. Angie's List, Inc.*, 951 F.3d 1263, 1266 (10th Cir. 2020)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**SUMMARY OF THE ARGUMENT**

Appellant timely filed her lawsuit and should not have been dismissed. Although

not decided by the trial court, Appellant's Title VII claims should not be barred by res

judicata.

It appears confusion was created by the timeline of events in the EEOC. The EEOC

issued Appellant her 2021 RTS letter for her 2019 Charge (563-2019-02638) ***before***

issuing her 2022 RTS letter for her 2016 Charge (28D-2016-00190).



Appellant's 2016 Charge/2021 RTS concerned unlawful acts that occurred in 2014

and 2015 while employed by Appellee, Burger King. [A.V.I. 166-170]. Appellant's 2019

Charge/2021 RTS concerned unlawful acts that occurred in December 2018 while

employed by Church's. [A.V. 159-165]. On July 14, 2022, 79 days after receiving her 2022

RTS, Appellant filed her lawsuit.

On October 27, 2023, Appellee filed a motion to dismiss Appellant's lawsuit alleging it was untimely and barred by res judicata.

On February 9, 2024, the trial court dismissed Appellant's lawsuit finding that Appellant was required to file her lawsuit within 90 days of receiving her 2021 RTS letter is not supported by the facts or the law.

It is uncontroverted that Appellant: (1) timely filed her 2016 Charge and 2019 Charge with the appropriate agency; and (2) received Right to Sue letters for both charges. It is uncontroverted that Appellant filed her lawsuit within 90 days of receiving her 2022 RTS letter.

Prior to filing her lawsuit, Appellant was required to exhaust administrative remedies for every independent or discrete unlawful act. To exhaust administrative remedies, Appellant was required to (1) file a timely charge of discrimination with the EEOC; (2) receive an EEOC right-to-sue letter; and (3) file suit within ninety days of the letter." *Brown v. Unified Sch. Dist. No. 501*, 465 F.3d 1184, 1186 (10th Cir. 2006) (*Brown II*). Multiple charges may be required to exhaust every independent or discrete unlawful act. Appellee did not allege that Appellant has not exhausted any of her allegations and has waived that argument in its Motion. However, Appellee has asserted in its Answer the affirmative defense that Appellant failed to exhaust her administrative remedies.[5] [A.V. 28; 42].

---

[5] "3.  To the extent Plaintiff's claim is based upon alleged facts that were not specifically stated in, did not grow out of, or are not like or reasonably related to the substance of her allegations in her EEOC and KHRC charge, she has failed to exhaust her administrative remedies and her claim fails as a consequence. Plaintiff must give notice of all claims of discrimination in the administrative complaint. She accordingly has failed to exhaust her administrative remedies." [A.V. 42].

It is uncontroverted that Appellant timely filed her 2016 Charge and 2019 Charge with the appropriate agency and has now exhausted her administrative remedies for every alleged independent or discrete unlawful act. Appellant filed her 2016 Charge for unlawful acts that occurred in 2014 and 2015 while working for Appellee. [A.V. 166-172]. Appellant filed her 2019 Charge for unlawful acts that occurred in December 2018 while working for Church's. [A.V. 159-163]. Appellant's 2016 Charge was filed three (3) years before her 2019 Charge. Appellant filed her 2019 Charge alleging that Appellee violated Title VII because of her prior complaints and her 2016 Charge. [A.V. 161].

The trial court misinterpreted and misapplied the law.

The trial court misquoted and misapplied the law finding that "Appellant cannot resurrect an expired right of action by ***restarting the litigation process*** based on a ***different*** EEOC charge." [A.V. 157]. The trial court further misapplied and misquoted the law finding that Appellant's 2016 Charge and 2019 Charge were "substantively identical". [A.V. 157].

In *Brown II*, cited and quoted by the trial court, the Tenth Circuit found that "'[i]f the claimant fails to file suit within the ninety-day window, lapsed claims are not revived by including them in a ***second*** EEOC charge and ***restarting the process***.'" [A.V. 155]. (emphasis added) (quoting *Brown II*, 465 F.3d 1184 at 1186).

In *Soso*, cited and quoted by the trial court, the Second Circuit found that a lawsuit is time-barred if the ***second RTS letter*** was based on "***exactly the same facts*** as the first Notice" or RTS letter. *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2nd Cir. 1986) (emphasis added).

7

Appellant did not attempt to restart the process after her 2021 RTS lapsed by filing a second charge. Appellant's 2016 Charge had already been filed and was still pending. There was no process that needed to be restarted. There was no need for Appellant to file another charge. Appellant's 2016 Charge/2022 RTS and 2019 Charge/2021 RTS were not based on "exactly the same facts". The EEOC assigned different charge numbers to Appellant's 2016 Charge/2022 RTS and 2019 Charge/2021 RTS and issued separate RTS letters for each. [A.V. 159-163; 164-165; 166-170; 171-172].

Appellant did not file a second charge or attempt to restart the process after her 2021 RTS letter expired. Appellant had already filed her 2016 Charge and it was still pending with the EEOC. Appellant's 2016 Charge/2022 RTS was not "based upon a charge involving "***exactly the same facts***" as her 2019 Charge/2021 RTS. *Soso*, 787 F.2d 827 at 828 (emphasis added). Appellant's 2016 Charge/2022 RTS was based on Appellee's unlawful acts in 2014 and 2015 while Appellant was employed by Appellee, Burger King. Appellant's 2019 Charge/2021 RTS was based on Appellant's employment at a subsequent employer, Church's, for unlawful acts in December 2018. Appellant attached her 2016 Charge to her 2019 Charge and included the necessary facts as background to put her charge in context. More specifically, Appellant's 2019 Charge specifically alleged that:

> By contacting my current employer and making defaming comments, Respondent is continuing to ***retaliate against me because of my complaints of discrimination, harassment, and retaliation and because I filed a Charge of Discrimination against them with the KHRC***.

[A.V. 161 (emphasis added)].

8

The trial court did not address Appellee's allegation that Appellant's lawsuit was barred by res judicata. [A.V. 154 FN4]. However, Judge Robinson specifically preserved Appellant's Title VII claims in her dismissal order, stating, among other things, "***Once the KHRC/EEOC's proceedings conclude, Watkins can file her claims for sexual discrimination and/or harassment under Title VII***." [A.V. 48 FN4 (emphasis added)]. The issues in Appellant's 1981 lawsuit and Appellant's Title VII lawsuit were not "identical". *Moss v. Kopp*, 559 F.3d 1155, 1161-1162 (10th Cir. 2009); *see also Brown v. Unified Sch. Dist. No. 501*, Case No. 17-cv-2390-JWL, 8 (D. Kan. Oct 19, 2018) (*Brown IV*). Appellant further was not given a full and fair opportunity to litigate her Title VII claims in her 1981 lawsuit and were not litigated by any tribunal.

Dismissing Appellant's lawsuit would be manifestly unjust and would not serve the purpose of justice.

## ARGUMENTS AND AUTHORITIES

**ISSUE I:    Whether the trial court erred in finding that Appellant had not timely filed her lawsuit.**

It is uncontroverted that Appellant: (1) timely filed her 2016 Charge and her 2019 Charge; and (2) received Right to Sue letters for both charges. Appellant received her RTS letter for her 2019 Charge in 2021 and her RTS letter for her 2016 Charge in 2022. [A.V. 164-165; 171-172].  Appellant's 2016 Charge/2022 RTS letter was assigned case number 28D-2016-00190C.[6] [A.V. 166-172]. Appellant's 2019 Charge/2021 RTS letter was

---

[6] In her Response, Plaintiff mistakenly referred to her 2016 Charge assigned case number 28D-2016-00190C as being filed in 2015. *See* [A.V. 144].

assigned case number 563-2019-02638. [A.V. 159-165]. It is further uncontroverted that Appellant filed her lawsuit within 90 days of receiving her 2022 RTS letter.

Appellee evaluated timeliness wrong. Appellee chose not to independently challenge any independent or discrete acts as untimely. Instead, Appellee claimed that the entirety of Appellant's lawsuit, every act and/or issue, was time barred for not filing her lawsuit within 90 days of her 2021 RTS letter. Appellee made the wrong argument and invited the trial court to misinterpret the law. Appellant properly filed her lawsuit based on her 2016 Charge/2022 RTS letter assigned case number 28D-2016-00190C. [A.V. 2; 27].

Title VII requires an employee to "'comply with specific administrative complaint procedures to exhaust administrative remedies before bringing a discrimination claim in federal court." *Bond v. Wormuth*, 22-5019, 8 (10th Cir. Dec 14, 2022) (quoting *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (quotations omitted); *see also Green v. Brennan*, 578 U.S. 547, 550 (2016)).

> The exhaustion rule derives from two principal purposes: '1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.'

*Smith v. Cheyenne Ret. Investors L.P.*,[7] 904 F.3d 1159 (10th Cir. 2018) (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994), *abrogated on other grounds by Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003)). "A plaintiff suing under Title VII must meet

---

[7] The trial court replaced "The exhaustion rule derives from two principal purposes" with "The EEOC charging process serves two main purposes". [A.V. 154-165]. Presumably the trial court replaced the "exhaustion rule" is because Defendant did not address exhaustion and made zero allegations that Plaintiff had not exhausted her administrative remedies.

three procedural conditions before suing: (1) file a timely charge of discrimination with the EEOC; (2) receive an EEOC right-to-sue letter; and (3) file suit within ninety days of the letter." *Brown II*, 465 F.3d 1184 at 1186.

In Kansas, under Title VII, for a charge to be timely, the employee must file his or her charge with the Kansas Human Rights Commission ("KHRC") within 180 days, or the Equal Employment Opportunity Commission ("EEOC") within 300 days, of the discriminatory act. *See* Kan. Stat. § 44-1005(i); *see also* 42 U.S.C. § 2000e–5(e)(1); *see also National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 101 (2002); *see also Lister v. City of Wichita*, No. 16-3229, 6 (10th Cir. Nov 15, 2016). Every independent or discrete act of discrimination or retaliation must be exhausted in a timely charge.[8] *See Apsley v. Boeing Co.*, 691 F.3d 1184 (10th Cir. 2012) (citing *Shikles v. Sprint/United Mgmt. Co.*,426 F.3d 1304, 1317 (10th Cir. 2005); *MacKenzie v. City of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194–95 (10th Cir. 2004). Every discrete act must be exhausted whether it occurred before or after an agency charge. *See Martinez*, 347 F.3d 1208 at 1210-11. This may require multiple agency charges.[9] *See Martinez*, 347 F.3d 1208.

---

[8] Although not discussed in Defendant's Motion, the timeliness of an employment discrimination charge depends upon whether it involves a discrete act or a hostile work environment claim. *See National Railroad*, 536 U.S. 101 at 101. Discrete acts of discrimination are only independently actionable if the acts occurred within the filing period. *See National Railroad*, 536 U.S. 101 at 101. Discrete acts include, termination, failure to promote, denial of transfer, or refusal to hire. *See National Railroad*, 536 U.S. 101 at 114. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *National Railroad*, 536 U.S. 101 at 110.

[9] The trial court states that Appellant could have filed her lawsuit based on her 2016 Charge/2021 RTS without referring to the December 2018 incident. [A.V. 155-156]. The trial court, however, did not address any potential timeliness or exhaustion issues that may have caused. More specifically, the trial court did not address if allegations from 2014 and 2015 would have been, or could have been, exhausted by a charge filed in 2019.

The ***existence of past acts*** and the employee's prior knowledge of their occurrence, however, ***does not bar employees from filing charges*** about related discrete acts ***so long as the acts are independently discriminatory*** and ***charges addressing those acts are themselves timely filed***. Nor does the statute bar an employee from using the ***prior acts as background evidence*** in support of a timely claim.

*National Railroad*, 536 U.S. 101 at 102 (emphasis added).

Once administrative remedies have been exhausted the agency will issue a Right to Sue Letter giving the employee 90 days to file a lawsuit. *See Brown II*, 465 F.3d 1184 at 1186. "If the claimant does not file suit within this 90-day period, 'the lapsed claims are not revived by including them in a second EEOC charge and restarting the process.'" [A.V. 155]. (quoting *Brown II*, 465 F.3d 1184 at 1186). Suit is time-barred if the **_second RTS letter_** was based on "**_exactly the same facts_**" as the first Notice" or RTS letter. *Soso*, 787 F.2d 827 at 828 (emphasis added). Acts in an expired RTS letter cannot be "resuscitated by the filing of a second administrative charge". *Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 391 (1st Cir. 2014). "[L]apsed claims are not revived by including them in a second EEOC charge and restarting the process". *Brown II*, 465 F.3d 1184 at 1186. Unlawful acts in a first time-barred charge cannot be resurrected by reiterating them in a second charge. *See Sandella v. Missouri*, 210 F.3d 850, 853 (8th Cir. 2000). "A plaintiff's claims are untimely if not filed within the 90-day window corresponding to his right-to-sue letter, and those **_untimely claims may not be revived_** by including them in a **_newer_** EEOC charge." *Palmer v. Pentair*, Case No. 18-02638-CM-TJJ (D. Kan. Jul 18, 2019) (citing *Brown II*, 465 F.3d 1184 at 1186) (emphasis added).

Background evidence may include any events that occurred prior to the relevant

12

statutory period.

> Under both Michigan law (the Elliot-Larsen Civil Rights Act) and federal
> law (Title VII), although claims regarding events that occurred before the
> relevant statutory period cannot form the basis of a lawsuit, *see Brown v.*
> *Unified Sch. Dist. 501*, 465 F.3d 1184 (10th Cir. 2006) (Title VII); *Garg v.*
> *Macomb Cty. Cmty. Health Serv.*, 696 N.W.2d 646, 659 (Mich. 2005)
> (ELCRA); Mich. Comp. Laws § 600.5805 (2009), **_such evidence is_**
> **_admissible_** when relevant in accordance with the traditional rules of
> evidence and the trial court's discretion to determine whether a hostile work
> environment exists. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558
> (1977); *Campbell v. Dep't of Human Serv.*, 780 N.W.2d 586, 590-92 (Mich.
> Ct. App. 2009). In other words, this **_evidence is relevant as background to_**
> **_put the sexual harassment claims in context_**.

*Marotta v. Ford Motor Co.*, Case No. 14-CV-11149, 3 (E.D. Mich. Sep 14, 2015)

(emphasis added).[10]

> As shown below, Appellant timely filed her lawsuit.


### A.    Appellant did not attempt to resurrect her 2016 Charge by filing her 2019 Charge.

Appellant filed her 2016 Charge and 2019 Charge prior to receiving her 2021 RTS

letter. [A.V.I. 159-163; 166-170]. Appellant did not file a second charge after her 2019

Charge/2021 RTS letter expired.

The trial court dismissed Appellant's entire lawsuit concluding that "Plaintiff did

not file this lawsuit within 90 days of receiving notice of her right to sue" stating that

---

[10] Although an unpublished decision, Appellant has provided the quote *Marotta* due to its quotes and citations to other cases. In *Evans*, the United States Supreme Court discussed background evidence and stated, in part, that "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc v. Evans*, 431 U.S. 553, 558 (1977).

Appellant's 2016 Charge and her 2019 Charge were "substantively identical" and that "Plaintiff cannot resurrect an expired right of action by ***restarting the litigation process*** based on a ***different*** EEOC charge." [A.V. 154; 157 (emphasis added)].

The trial court misinterpreted and rewrote legal precedent. Initially, the trial court correctly quoted *Brown II* stating that "[i]f the claimant does not file suit within this 90-day period, 'the lapsed claims are not revived by including them in a ***second*** EEOC charge and ***restarting the process***.'" [A.V. 154 (emphasis added)]. (quoting *Brown II*, 465 F.3d 1184 at 1186). The trial court, however, later modified the quote to "Plaintiff cannot resurrect an expired right of action by restarting the ***litigation*** process based on a ***different*** EEOC charge." [A.V. 157 (emphasis added)].

First, the trial court replaced "***second*** EEOC charge" with "***different*** EEOC charge". [A.V.I. 154; 157 (emphasis added)]. Second, it replaced "restarting ***the process***" with "restarting the ***litigation process***". [A.V. 154; 157 (emphasis added)]. The differences are significant. Appellant did not attempt to revive lapsed claims "by including them in a ***second*** EEOC charge and ***restarting the process***." Appellant did not file a second EEOC charge *after* her 2021 RTS letter expired. Appellant also did not seek to restart the agency process. Appellant had already filed her 2016 Charge and the EEOC process had already started. [A.V. 166-170]. Instead of denying Appellee's Motion the trial court improperly changed the law.

**B.     Appellant's 2016 Charge and 2019 Charge were not based on "*exactly the same facts*".**

The trial court compounded its error by finding that Appellant's 2016 Charge and

2019 Charge were "***substantively identical***".[11] [A.V.I. 157 (emphasis added)]. In *Soso*, cited by the trial court, the Appellant's lawsuit was dismissed because *after* letting her first EEOC RTS letter expire, the Appellant filed a *second* charge and obtained a second RTS letter "based upon a charge involving ***exactly the same facts*** as the first Notice." *Soso*, 787 F.2d 827 at 828 (emphasis added).

The trial court misinterpreted and rewrote legal precedent. The trial court replaced "exactly the same facts" with "substantively identical". Appellant's 2016 Charge and 2019 Charge were not based on "***exactly the same facts***". Appellant's 2016 Charge was based on Appellee's unlawful acts in 2014 and 2015 while she was employed by Appellee, Burger King. [A.V. 166-170]. Appellant's 2019 Charge – *filed three (3) years after her 2016 Charge* – was based on retaliation by Appellee in December 2018 leading to Appellant's employment and termination from a subsequent employer, Church's. [A.V. 159-163]. Appellant included allegations from her 2016 Charge in her 2019 Charge as background setting forth that Appellee retaliated against her in December 2018 due to her prior complaints based on 2014 and 2015 behavior. The background provided the necessary context.

The trial court seems to have conceded that Appellant's 2016 Charge and 2019 Charge were not based on "***exactly the same facts***" stating that:

> Moreover, even if plaintiff did not want to file suit in regard to the events of December of 2018, she could have sued to challenge the conduct which occurred from September of 2014 to August of 2015, and simply omitted

---

[11] Defendant invited error incorrectly alleging that Plaintiff's "***substantive*** factual allegations are ***identical***" in her 2016 Charge and 2019 Charge. [A.V. 48]. (emphasis added).

the 2018 events from her lawsuit.

[A.V. 155-156].[12]

Appellee chose not to evaluate the timeliness of every independent or discrete act in Appellant's lawsuit. Background evidence may be included in a charge to provide context.

Appellant timely filed her lawsuit based on her 2016 Charge/2022 RTS letter. She did not file a second charge after her 2021 RTS letter expired attempting to restart the administrative process. Moreover, Appellant's 2016 Charge and 2019 Charge were not based on "exactly the same facts". Appellant filed her lawsuit within 90 days of receiving her 2022 RTS letter. The trial court should not have dismissed Appellant's lawsuit as untimely and must be reversed.

Appellee was wrong. Appellee chose not to address exhaustion. Appellee chose not to address the timeliness of every independent or discrete act. Instead, Appellee incorrectly chose not to address exhaustion and wrongly claimed that Appellant's entire lawsuit was untimely. Appellee invited error, and, unfortunately, convinced the trial court to dismiss Appellant's lawsuit based on the misapplication of applicable law and the relevant facts. Appellant was not required to make arguments for Appellee.

**ISSUE II:    Whether Appellant's lawsuit filed on August 19, 2019 based on Section 1981 filed in an earlier lawsuit bars her Title VII claims in the current**

---

[12] Defendant conceded that Plaintiff's 2016 Charge and 2019 Charge were not based on "***exactly the same facts***" stating "that Plaintiff's 2019 Charge "addressed all the allegations made in respect to the purported events at the Genesh location in 2015-2016, as well as Plaintiff's assertion that ***Genesh engaged in additional retaliation by interfering with her employment in 2018 at a second fast-food restaurant***". [A.V. 48 (emphasis added)].

lawsuit.

"The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a ***legal claim*** that ***was or could*** have ***been the subject of a previously issued final judgment***." *Brown IV*, Case No. 17-cv-2390-JWL at 8 (quoting *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (emphasis added). "Collateral estoppel will bar a claim if four elements are met: (1) the ***issue previously decided is identical*** with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Moss*, 559 F.3d 1155 at 1161-1162 (10th Cir. 2009); *see also Brown IV*, Case No. 17-cv-2390-JWL at 8 (D. Kan. Oct 19, 2018) (emphasis added).

In *Osage Wind*, the Tenth Circuit did not bar a second lawsuit stating, in part, that:

> Relying on the res judicata doctrine, Osage Wind now seeks to preclude OMC from appealing the judgment below on the theory that OMC could have asserted the instant claim in the earlier litigation. *See Wilkes v. Wyoming Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) ("Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action." (emphasis in original) (quoting *Satsky v. Paramount Comm., Inc.*, 7 F.3d 1464, 1467-68 (10th Cir. 1993) )). Because Osage Wind has the burden of proving its affirmative defense of claim preclusion, *Nwosun v. Gen. Mills Rest.*, 124 F.3d 1255, 1257 (10th Cir. 1997), we will not bar OMC from asserting the instant claim unless Osage Wind can show that the claim reasonably could have been raised in the prior lawsuit. We hold that Osage Wind has not met its burden.

*United States v. Osage Wind, LLC*, 871 F.3d 1078, 1086-1087 (10th Cir. 2017).[13] As shown by Judge Robinson's order, Appellant could not file her Title VII claims in her 1981 lawsuit.

Appellant's 1981 claims were not tolled while her charge was pending with the EEOC, and she had to timely file her 1981 claims. *See* 42 U.S.C. § 1981. During the pendency of her 1981 claims, Appellant's Title VII charges had not been exhausted and were not ripe because they were still pending with the EEOC. Because Appellant could not include her Title VII claims in her 1981 lawsuit, Judge Robinson specifically preserved Appellant's Title VII claims in her order dismissing Appellant's 1981 claims. [A.V. 96-103].

Appellant could not have filed her Title VII claims during her prior 1981 lawsuit. Judge Robinson's order dated April 2, 2021, dismissed Appellant's Section 1981 race claims while specifically preserving Appellant's "***claims for sexual discrimination and/or harassment under Title VII***". [A.V. 96-103]. In footnote 23 of her Order, Judge Robinson specifically stated:

> The ***Court will not delay ruling*** on Burger King's motion to dismiss in this § 1981 case, which has been pending since August 19, 2019. ***Once the KHRC/EEOC's proceedings conclude, Watkins can file her claims for sexual discrimination and/or harassment under Title VII***.

---

[13] Brown filed five (5) lawsuits against the school district over several decades. In *Brown IV*, the trial court found that the plaintiff's fourth lawsuit against the defendant was not barred by res judicata or collateral estoppel. "Because defendant has the burden of proving these affirmative defenses, *see United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017), the court will not bar plaintiff from asserting his claims ***unless defendant can show that plaintiff's claims reasonably could have been brought in one of plaintiff's prior lawsuits*** against the district or that a ***previously decided dispositive issue is identical to a dispositive issue in this case***. Defendant has not met its burden. Unlike plaintiff's prior lawsuits, this lawsuit stems, at least in part, from plaintiff's application for a specific, open position in this district and defendant's particular hiring decision for that position." *Brown IV*, Case No. 17-cv-2390-JWL at 8 (emphasis added).

[A.V. 102 FN23 (emphasis added)]. Judge Robinson was well aware of Appellant's charges pending in the EEOC, and, for that reason, specifically preserved those claims in her Order. [A.V. 102 FN3].

Appellant's "***claims for sexual discrimination and/or harassment under Title VII***" were not litigated by any tribunal. [A.V. 102 FN23 (emphasis added)]. The dispositive issues in Appellant's 1981 lawsuit were not "identical" to the dispositive issues in the current case under Title VII.

First, the issues decided by Judge Robinson and the present case were not identical. The first lawsuit was based on race discrimination under 1981. The present lawsuit is based on Title VII based on sex. Second, Appellant did not have a full and fair opportunity to litigate her Title VII claims in the prior action. [A.V. 102 FN23]. Appellant could not file her Title VII claims because she had not received a RTS letter because her charge was pending in the EEOC. This is supported by Judge Robinson specifically preserving Appellant's Title VII claims. [A.V.I. 102 FN23]. Finally, Appellee has not shown how Appellant's Title VII claims reasonably could have been brought in Appellant's 1981 lawsuit. *See Osage Wind, LLC*, 871 F.3d 1078 at 1087; *see also Brown IV*, Case No. 17-cv-2390-JWL at 9. Plaintiff's Title VII claims were still pending in the EEOC and had not been exhausted. [A.V.I. 164-165; 171-172].

Although the trial court did not decide this issue, Appellee's Motion should be denied. Judge Robinson specifically preserved Appellant's Title VII claims in her order. [A.V.I. 102 FN23]. The issues were not the same and Appellant did not have the opportunity to litigate her Title VII claims. Appellee's Motion should be denied.

19

**CONCLUSION**

It would be manifestly unjust to prevent Appellant from litigating her Title VII claims in her 2016 Charge/2022 RTS letter. Appellant timely filed her Title VII lawsuit within 90 days of receiving her 2022 RTS letter. Plaintiff's Title VII claims were not barred by res judicata.

The EEOC assigned different charge numbers to Appellant's 2019 Charge/2021 RTS and 2016 Charge/2022 RTS. Her 2019 Charge/2021 RTS was assigned case number 563-2019-02638, and her 2016 Charge/2022 RTS letter was assigned case number 28D-2016-00190C. At the time the EEOC issued Appellant her 2019 Charge/2021 RTS, her 2016 Charge was still pending. Appellant did not file a second charge after her 2019 Charge/2021 RTS letter lapsed seeking to restart the process; her 2016 Charge was still pending with the EEOC until her 2022 RTS was issued. In other words, the EEOC issued Appellant her 2022 RTS letter for her 2016 Charge **_after_** her 2019 Charge/2021 RTS was issued. Further, Appellant's 2016 Charge and 2019 Charge were not based on exactly the same facts. Appellant's 2016 Charge was based on allegations in 2014 and 2015 while she was employed by Burger King. Appellant's 2019 Charge was based on allegations in December 2018 while she worked for a subsequent employer, Church's. Further, Appellant's Title VII claims are not barred by res judicata. She could not file her Title VII claims in her 1981 lawsuit, as specifically pointed out and preserved, by Judge Robinson.

Appellee's Motion should have been denied and Appellant should be permitted to proceed with her lawsuit. If Appellee wants to challenge whether Appellant timely exhausted individual allegations, then it can do so in a motion for summary judgment.

**STATEMENT IN SUPPORT OF REQUEST FOR ORAL ARGUMENT**

This appeal presents important issues that will affect virtually all civil cases in the Tenth Circuit. Parties are required to follow the rules. When a party chooses not to do so, then it should be held accountable.

Respectfully submitted,

MCKEE LAW, L.L.C.

/s/ Aaron C. McKee
Aaron C. McKee                    KS # 20889
MCKEE LAW, LLC
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@ksmoemploymentlaw.com

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> [ **X**] this brief contains 5,662 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

> [ ] this brief uses a monospaced typeface and contains <state the number of> lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [**X**] this brief has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365 in 13 pt. Times New Roman**, or

> [ ] this brief has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

3. The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, of McAfee, LiveSafe, Microsoft Defender, updated on July 11, 2024, and according to the program are free of viruses.

Date: July 11, 2024

/s/ Aaron C. McKee
Aaron C. McKee     KS # 20889

**CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of Appellant's Opening Brief was

served and transmitted on July 11, 2024, via CM/ECF to the following:

**Myndee M. Lee**, Lee Schwalb, L.L.C., 7381 W 133rd St, Second Floor, Overland
Park, Kansas 66213, mlee@leeschwalb.com
**Charles D. Lee**, Lee Schwalb, L.L.C., 7381 W 133rd St, Second Floor, Overland
Park, Kansas 66213, clee@leeschwalb.com
**ATTORNEYS FOR DEFENDANT**
☐ US mail     ☐ Electronic Mail     ☒ CM/ECF     ☐ Facsimile

MCKEE LAW, L.L.C.

/s/ Aaron C. McKee
Aaron C. McKee                     KS # 20889
MCKEE LAW, LLC
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@ksmoemploymentlaw.com

23

# United States District Court

------------------------- DISTRICT OF KANSAS----------------------------

KENYA WATKINS,

        Plaintiff,

v.                              Case No. 2:22-cv-02273-KHV-BGS

GENESH, INC. d/b/a BURGER KING,

        Defendant.

## JUDGMENT IN A CIVIL CASE

☐      Jury Verdict.  This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒      Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

**Consistent with the Memorandum and Order filed on February 9, 2024, judgment is entered for the defendant Genesh, Inc. d/b/a Burger King and against plaintiff Kenya Watkins.**

      02/09/2024                         SKYLER B. O'HARA
           Date                        CLERK OF THE DISTRICT COURT

                                   by:   s/ Jeff Hokanson
                                      Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| KENYA WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 22-2273-KHV** |
| GENESH, INC. d/b/a BURGER KING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On July 14, 2022, Kenya Watkins filed suit against Genesh, Inc., d/b/a Burger King, alleging that defendant subjected her to a hostile work environment, discriminated against her based on sex and terminated her employment in retaliation for complaints of sex discrimination in violation of 42 U.S.C. § 1981 (Count I),[1] the Kansas Acts Against Discrimination ("KAAD"), Kan. Stat. Ann. § 44-1001 et seq. (Count II) and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq. (Counts III and IV).  See Complaint (Doc. #1).  This matter is before the Court on Defendant's Motion To Dismiss Watkins' Complaint (Doc. #14) filed October 27, 2023. For reasons set forth below, the Court sustains defendant's motion.

### Factual Background

Plaintiff's complaint alleges as follows:

Plaintiff is an African American female.  Between August 14, 2014 and August 23, 2015, defendant, a Burger King franchisee, employed plaintiff as a cashier and crew member.  Michael Jackson worked as General Manager of the location and acted as plaintiff's supervisor.[2]

---

[1]       In Plaintiff's Response To Defendant's Motion To Dismiss (Doc. #28) filed January 17, 2024, plaintiff voluntarily dismissed her claims under 42 U.S.C. § 1981.

[2]       Plaintiff's complaint does not allege Jackson's race.

Throughout plaintiff's employment, Jackson (1) assigned plaintiff various tasks and responsibilities that put her in close proximity to him; (2) propositioned plaintiff for sex and requested that she come to his house to have sex; (3) worked without a belt on and his pants sagging; (4) touched his penis and asked plaintiff when he was "going to get some;" (5) told plaintiff that she made him "so horny;" (6) attempted to touch plaintiff's vagina and placed his hands in her pants; (7) pretended to have sex with plaintiff while she worked the drive-thru window; and (8) informed plaintiff that he would not promote her to a managerial position unless she had sex with him. Complaint (Doc. #1) at 10–11. Plaintiff refused each of Jackson's advances and requests.

At work on July 26, 2015, Jackson tried to force plaintiff to have sex with him. In response, plaintiff called 911. The next day, July 27, 2015, Jackson again attempted to have sex with plaintiff by forcing her into the back-room freezer. Plaintiff did not report that incident to the police but that same day, she complained to the Burger King corporate office, both verbally and in writing, that Jackson had sexually harassed her and subjected her to a hostile work environment. On July 28, 2015, plaintiff met with a corporate representative who advised her that the corporate office planned to replace Jackson as General Manager.

Following plaintiff's complaints to corporate and her 911 call, defendant decreased the number of hours that plaintiff typically worked. On August 22, 2015, plaintiff worked her shift as scheduled. On August 23, 2015, she called defendant and requested her schedule for the upcoming week. Defendant informed plaintiff that she was scheduled to work that day. That same day, defendant terminated her employment on the grounds that she failed to show up for her scheduled shift.

Over three years later, in December of 2018, defendant contacted plaintiff's then-employer, informing it that it should not have hired plaintiff because she previously filed complaints of discrimination and harassment.

## Procedural History

On July 22, 2019, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), No. 563-2019-02638.[3]  See Exhibit A.  The five-page charge, which her attorney prepared, alleged discrimination between August 14, 2014 and December 27, 2018, on the basis of race, color and sex, and retaliation for protected activity.  Specifically, plaintiff complained that defendant subjected her and other women to acts of discrimination, harassment, a hostile work environment and retaliation due to (among other things) gender, race, color, national origin and complaints of sexual harassment.  Plaintiff also complained that defendant subjected her and others to a hostile work environment, and retaliated because she openly opposed acts and practices forbidden by the KAAD and Title VII.  Plaintiff alleged that Jackson began sexually harassing her around September of 2014, and defendant terminated her

---

[3]     Plaintiff did not attach to her complaint copies of the Charges of Discrimination that she filed with the EEOC, or copies of the notices of her right to sue.  Nevertheless, because the complaint refers to these documents which are central to plaintiff's claim, and defendant appropriately submitted indisputably authentic copies of them, the Court considers them on defendant's motion to dismiss.  See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

Further, the Court may take judicial notice of the EEOC documents because they are administrative documents.  See Golden v. Mgmt. & Training Corp., 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions."); Lunardini v. Mass. Mut. Life Ins. Co., 696 F. Supp. 2d. 149, 157 n.6 (D. Conn. 2010) ("Where a plaintiff alleges in the complaint that charges of discrimination have been filed with the. . . EEOC, those charges themselves may be considered either as matters referenced in the complaint or as public records subject to judicial notice." (internal quotations omitted)).  Accordingly, the Court takes judicial notice of these documents and attaches them hereto as Exhibits A, B, C and D.

employment on August 23, 2015.  Plaintiff complained that more recently, in December of 2018, defendant contacted her current employer, Church's Chicken, and communicated derogatory remarks about her, her drug use and the fact that she had filed a sexual harassment claim.

Plaintiff alleges that in April of 2020, due to the COVID-19 pandemic, the EEOC stopped issuing right-to-sue letters, unless specifically requested by the claimant.  See Plaintiff's Reply To Defendant's Motion In Opposition To Plaintiff's Motion For Leave To File Her Amended Complaint at 3, Watkins v. Genesh, Inc., d/b/a Burger King, No. 19-CV-02486-JAR-GEB (D. Kan. July 27, 2020), ECF Doc. 31.  Plaintiff apparently requested a letter, because on July 12, 2021, the EEOC sent plaintiff a "Notice of Right to Sue (Issued on Request)."  See Exhibit B.  The notice stated that based on EEOC Charge No. 563-2019-02638, the EEOC was issuing the notice under Title VII at plaintiff's request.  It also advised plaintiff that any lawsuit under Title VII must be filed in federal or state court within 90 days of receipt of the notice, or her right to sue based on that charge would be lost.

## Analysis

Plaintiff did not file this lawsuit within 90 days of receiving notice of her right to sue. Defendant therefore seeks to dismiss this lawsuit under 42 U.S.C. §§ 2000e–5(e)–(f).[4]

The EEOC charging process serves two main purposes: (1) "to give notice of the alleged violation to the charged party" and (2) "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance."  Smith v. Cheyenne Ret.

---

[4]     In addition, defendant argues that plaintiff's complaint asserts identical factual allegations as plaintiff's first suit against defendant, Watkins v. Genesh, Inc., d/b/a Burger King, No. 19-CV-02486-JAR-GEB (D. Kan.), and therefore the doctrine of res judicata bars plaintiff's claims.  Because the Court finds that plaintiff's suit is time-barred, it does not address defendant's arguments of res judicata.

Invs. L.P., 904 F.3d 1159, 1164 (10th Cir. 2018) (quotation marks and citation omitted).   To advance these purposes, the EEOC notifies the claimant that she has a right to sue, and that suit is then limited in scope to the charging document.   Id.   Courts are to liberally construe the claims set forth in an EEOC charge.   Id.

Once the claimant receives notice of her right to sue, Title VII requires her to file suit within 90 days. 42 U.S.C. § 2000e–5(f)(1); see also Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch., 465 F.3d 1184, 1186 (10th Cir. 2006).   If the claimant does not file suit within this 90-day period, "the lapsed claims are not revived by including them in a second EEOC charge and restarting the process."   Brown, 465 F.3d at 1186.

In response to defendant's argument that her suit is time-barred, plaintiff argues that (1) Charge No. 563-2019-02638 only sought relief based on conduct which occurred in December of 2018; (2) even though Charge No. 563-2019-02638 contained comprehensive allegations of discrimination and retaliation from August 14, 2014 through August 23, 2015, those allegations were merely "background" for her complaint of retaliation in December of 2018; and (3) on receipt of the right-to-sue letter, plaintiff simply "chose not to file a lawsuit against Defendant based on her allegations from December 2018."   Plaintiff's Response To Defendant's Motion To Dismiss (Doc. #28) at 5–6, filed January 17, 2024.   This reasoning is specious.

 As noted, plaintiff did not file suit within 90 days of receiving the right-to-sue letter associated with Charge No. 563-2019-02638.   Instead, on July 14, 2022, nearly a year after she received the notice, plaintiff filed this action.   Plaintiff's argument cannot be supported by any reasonable reading of Charge No. 563-2019-02638.   Moreover, even if plaintiff did not want to file suit in regard to the events of December of 2018, she could have sued to challenge the conduct

which occurred from September of 2014 to August of 2015, and simply omitted the 2018 events from her lawsuit.

To avoid this result, plaintiff cites a second right-to-sue-letter which the EEOC issued on April 26, 2022 based on a different charge, Charge No. 28D-2016-00190.[5]  In Charge No. 28D-

---

[5]    The parties have larded the record with offhand and conflicting representations to the effect that on September 5, 2019, the EEOC issued a third right-to-sue letter, in regard to Charge No. 563-2019-02638 (which underlies this lawsuit), and then rescinded that letter on September 18, 2019. According to plaintiff, the rescission occurred because plaintiff had a lawsuit pending in front of the Honorable Julie A. Robinson, which sought relief under 42 U.S.C. § 1981 for the same claims of sex and race discrimination and retaliation.  See generally Watkins v. Genesh, Inc., d/b/a Burger King, No. 19-CV-02486-JAR-GEB (D. Kan.).  Because a court can take judicial notice of its own decisions and records of prior cases, the Court takes judicial notice of the District of Kansas lawsuit, Case No. 19-CV-02486-JAR-GEB. See Hutchinson v. Hahn, 402 F. App'x 391, 394–95 (10th Cir. 2010).

    Defendant claims that the EEOC rescinded the right-to-sue letter "upon the realization that this action [before Judge Robinson] was not filed as a Title VII claim, but rather a § 1981 claim." See Defendant's Memorandum In Opposition To Plaintiff's Motion For Leave To File First Amended Complaint And Dismiss Defendant's Motion To Dismiss As Moot (Doc. #27 filed in D. Kan. No. 19-CV-02486-JAR) at 3.  On June 15, 2020, plaintiff represented to Judge Robinson that a right-to-sue letter had been granted and then rescinded by the EEOC and, as a result, plaintiff had been unable to file Title VII claims in her Section 1981 case.  See Plaintiff's Motion For Leave To File First Amended Complaint And Dismiss Defendant's Motion To Dismiss As Moot (Doc. #24 filed in D. Kan. No. 19-CV-02486-JAR) at 2.

    The significance of the alleged rescission is totally unclear.  In granting plaintiff leave to amend her complaint in Judge Robinson's case on October 9, 2020, Magistrate Judge Gwynne E. Birzer noted as follows:

> The Court notes both parties allude to a rescinded right to sue letter, but neither party provides a copy of the notice, or fully illuminates the importance of this information in support of its current position. (See Motion, ECF No. 24 at 2; Def.'s Response, ECF No. 27 at 3).  Frankly, it is altogether unclear why the notice was rescinded and how this relates to Plaintiff's § 1981 claim or her request to amend. Although the Court tends to agree with Defendant the rescinded notice does not necessarily support Plaintiff's request for amendment on her § 1981 claim (see Resp., ECF No. 27 at 3); this is not fatal to Plaintiff's request.

See Memorandum And Order (Doc. #34 filed in D. Kan. No. 19-CV-02486-JAR) at 8–9.  To further confound matters, defendant now claims that its and plaintiff's representation that the

(continued. . .)

2016-00190, plaintiff alleged discrimination based on race, color, sex, national origin and ancestry, and retaliation.  See Exhibit C.  She specifically complained that defendant terminated her employment on August 23, 2015, and that the discrimination was continuing in nature throughout her employment from August 14, 2014 to August 23, 2015.

On April 26, 2022, the EEOC dismissed Charge No. 28D-2016-00190 and notified plaintiff of her right to sue within 90 days of receipt of the letter.  See Exhibit D.  Plaintiff argues that she filed this lawsuit within 90 days of that notice and that her complaint specifically invokes Charge No. 28D-2016-00190 and attaches a copy of the right-to sue-letter dated April 26, 2022.

Plaintiff cannot resurrect an expired right of action by restarting the litigation process based on a different EEOC charge.  Even though plaintiff references the more recent letter in her complaint, the charges are substantively identical to those listed in Charge No. 563-2019-02638.  Whether this action is time-barred must be determined by reference to the first notice of right to sue which plaintiff received, dated July 12, 2021.  See Soso Liang Lo v. Pan Am. World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986) ("[W]hether the present action is time barred must be determined with reference to only the first Notice of Right to Sue.  Otherwise, the time limitations of 42 U.S.C. § 2000e–5(f)(1) would be meaningless, because potential Title VII plaintiffs could

---

<sup>5</sup> (. . .continued)
EEOC rescinded the right-to-sue letter "was not true."  Defendant's current claim is that "no rescission of the right to sue letter occurred.  Because she cannot, plaintiff offers no evidence to establish that it did."  See Defendant's Reply To Plaintiff's Response To Motion To Dismiss Complaint (Doc. #29) filed January 31, 2024 at 2.

This Court shares Judge Birzer's bewilderment about whether the EEOC issued and rescinded a right-to-suit letter dated September 5, 2019 and, if so, why it is relevant to this motion, or even this case.  Because the parties belabor and contradict each other on this issue, the Court merely notes the inadequacy of their briefing, and entirely disregards the purported rescission.

evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased.").

Accordingly, because plaintiff did not file this suit within 90 days of receiving her first right-to-sue letter, this suit is time-barred.  The Court sustains defendant's motion to dismiss plaintiff's complaint.

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion To Dismiss Watkins' Complaint</u> (Doc. #14) filed October 27, 2023 is **SUSTAINED.**

Dated this 9th day of February, 2024 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

COW Channel 3    7/22/2019 10:12:14 AM    PAGE    2/006    Fax Server

Case 2:22-cv-02378-HLT-BGS   Document 130-1   Filed 02/09/24   Page 10 of 16
Appellate Case: 24-3043   Document: 19   Date Filed: 07/11/2024   Page: 37

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | __ FEPA<br>X EEOC | 563-2019-02638 |

Kansas Human Rights Commission
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Kenya Watkins | 316-744-3050 / 316-550-3441 | 11-16-76 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1708 Pinecrest, Wichita, Kansas 67208 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Genesh, Inc. d/b/a Burger King | Over 15 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 528 N. Oliver, Wichita, Kansas 67208 | | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest        Latest |
|---|---|
| **X** RACE **X** COLOR **X** SEX __ RELIGION __ NATIONAL ORIGIN | August 23, 2015 to December 27, 2018 |
| **X** RETALIATION __ AGE __ DISABILITY __ OTHER (Specify below.) | **X** CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

Previous related charge: **28D-2016-00190.**

    I was hired part-time at Genesh, Inc. d/b/a Burger King ("Respondent") on or about August 14, 2014. I last held the position of a Cashier/Crew Memer. I was paid $7.50 per hour. My last day on the job was on or about August 23, 2015, when I was terminated. The most recent date that I was discriminated and/or retaliated against was December 27, 2018.

    I believe that Respondent has a history of sex discrimination and/or sexual harassment. I believe that Respondent has a history of covering up allegations of sex discrimination and/or sexual harassment and retaliation.

    I believe that I (and other women) was subjected to acts of discrimination, harassment, a hostile work environment and retaliation due to, among other things, my gender, my race, my color, my national origin, and my complaints of sexual harassment and hostile work environment, and as acts of retaliation for having openly opposed acts and practices forbidden by the Kansas Act Against Discrimination, Title VII of the Civil Rights Act 1, and subjected to additional discriminatory actions as acts of retaliation for having previously complained of discrimination and retaliation. I further believe I was discriminated and retaliated against because Respondents were aware that I had knowledge of other complaints and would provide information, if investigated.

    I further believe that the Respondent failed to follow their policies and procedures and investigate my complaints (and co-workers' complaints) of discrimination, harassment, and a hostile work environment and retaliated against me (and other women) for making such complaints.

McKee Law, L.L.C., 222 South Cherry Street ■ Olathe, Kansas 66061
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

JUL 23 PM 4:09

I further believe that the Respondent discriminated, harassed, created a hostile work environment and retaliated against me (and other women) by failing to provide me (and other women) the same benefits and privileges provided to male employees, such as working in a safe environment, and retaliated against me (and other women) by interfering with my ability to secure new employment and interfering with my subsequent employment.

I believe that women were treated differently from men. I believe that I (and other women) was treated less favorably throughout employment because I am female and for refusing the advances of male employees. I further believe that the environment at Genesh, Inc. d/b/a Burger King was hostile towards women. It is my understanding that numerous complaints have been made by women alleging discrimination, harassment, a hostile work environment and/or retaliation.

A hostile work environment exists when the work environment is sufficiently altered by (a) behavior of management or (b) behavior of coworkers infused with the power of management, to reach the *functional equivalent of an adverse employment action motivated by protected status.* Title VII requires equality in access to all the terms and conditions of employment. The *terms and conditions of employment* include not only being hired, paid equally and disciplined fairly, but being able to work daily free from the negative actions and words that those in the majority enjoy. Only the employer has the power to create or alter working conditions and therefore the source of hostility that can alter working conditions is from actions by other employees (manager or co-worker) in some manner *clothed with the power of the employer* to alter those working conditions. Behavior that affects the terms and condition of employment can be, of course, words or direct insult, but also actions without words that are, in some way, clothed with managerial power. This can also include the *failure to act* in response to knowledge of words or actions adverse to a minority. The question is at what moment words or actions (in either sufficient number or if individually, sufficient shock value) alter those terms and conditions.

Harassment need not be severe and pervasive to impose liability; one or the other will do. *Hostetler v. Quality Dining*, 218 F.3d 798, (Cir. 2000) (citing Smith v. Sheahan, 189 F.3d 529, 533 (7th Cir. 1999); *see Harris*, 510 U.S. at 21, 114 S. Ct. at 370; *Meritor*, 477 U.S. at 66, 106 S. Ct. at 2405. There is no "magic number" of incidents required to establish a hostile environment. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994), citing *Rodgers v. Western- Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). We have repeatedly recognized that even one act of harassment will suffice if it is egregious. *See Smith*, 189 F.3d at 533-34; *DiCenso v. Cisneros*, 96 F.3d 1004, 1009 (7th Cir. 1996); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1273-74 & n.4 (7th Cir. 1991); *King v. Board of Regents of Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990); *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1186-87 (7th Cir. 1986); *see also Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 464 (7th Cir. 1990) (implicitly assuming single act sufficient to establish hostile environment)).

In or around September 2014, Michael Jackson, the General Manager of my store while working for Respondent, began sexually harassing me.

Mr. Jackson asked me to come to his house, touched my behind and my vagina, and would proposition me for sex. Mr. Jackson told me that he was the decision maker for a managerial promotion, and I would not be promoted if I did not agree to perform sexual favors for him. Mr. Jackson told me that I made him "so horny" and would tell me that he was "going to get some". Mr. Jackson tried to

force me into the back room and/or freezer on multiple occasions to have sex with him. Mr. Jackson told me to "come inside and let [him] play around in [my] pussy".

In or around July 2015, I made both a written and verbal complaint to Respondent's corporate office regarding the sexual harassment. On or about July 26, 2015, I called 911 to report an assault after Mr. Jackson physically tried to have sex with me.

On or about August 23, 2015, Respondent terminated my employment.

On or about January 7, 2016, I filed a Charge of Discrimination against Respondent with the Kansas Humans Right Commission (Charge No. 38411-16), attached hereto as **Exhibit "A".**

In or around December 2018, Respondent contacted me while I was working at my current employer, Cajun Operating Company d/b/a Church's Chicken ("Church's). The representative from Respondent asked me "what I wanted.

Upon information and belief, the Owner of Respondent is friends with the Owner of Church's.

Upon information and belief, Respondent also called Church's and told them that they should not have hired me. Further, Respondent told Church's that I was on drugs and that "everyone should stay away from [me]" I filed a sexual harassment claim.

By contacting my current employer and making defaming comments, Respondent is continuing to retaliate against me because of my complaints of discrimination, harassment, and retaliation and because I filed a Charge of Discrimination against them with the KHRC.

I further believe that the inappropriate comments from Respondent's employees were sufficiently severe and pervasive in an effort to create a hostile work environment at my current employment.

## Conclusion

I believe that Respondent's leadership fosters or condones a culture that marginalizes, demeans, and undervalues women.

I believe that Respondent discriminated and/or retaliated against me by taking adverse employment action against me including, but not limited to, the following:

1.  Refusing to investigate my complaints of sexual harassment and hostile work environment;
2.  Terminating me when I was qualified and available;
3.  Interfered with my ability to perform the essential functions of my job;
4.  Promoting a hostile work environment;
5.  Failing to prevent or correct a hostile work environment;
6.  For allowing its employees to discriminate, sexually harass, and retaliate against me;
7.  Refusing to take any action to prevent its employees from further discrimination and retaliation and from creating a hostile work environment;
8.  For terminating my employment; and,

McKee Law, L.L.C., 222 South Cherry Street ■ Olathe, Kansas 66061
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

35

Case 2:22-cv-02273-KHV-BGS Document 19-1 Filed 10/09/24 Page 13 of 16

COW Channel 3          7/22/2019 10:12:14 AM   PAGE   5/006   Fax Server
Appellate Case: 24-3043   Document: 19   Date Filed: 07/11/2024   Page: 40

9.      For contacting my current employer to further retaliate against me.

I believe that the actions of Respondents were discriminatory and retaliatory.  My job was as a Cashier. I had a satisfactory employment record with Respondents and my most recent rate of pay is approximately $7.50 per hour.

On information and belief, based upon my experiences with Respondents, I believe that Respondents knew, or should have known, of the behavior of its managers and employees and it failed to take any action.

I further believe that Respondents created a hostile work environment to discriminate and to retaliate against me and that Respondents are attempting to create a hostile work environment to further retaliate against me at my current employer.

On information and belief, I further believe that Respondents have engaged in a pattern or practice of discrimination and retaliation against individuals with similarly situated to myself.

2019 JUL 23   PM 4: 09

McKee Law, L.L.C., 222 South Cherry Street ■ Olathe, Kansas 66061
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

Case 2:22-cv-02783-HKW-BGS Document 150-1 Filed 10/20/2234 Page 19 of 56

COW Channel 3      7/22/2019 10:12:14 AM   PAGE   6/006   Fax Server
Appellate Case: 24-3043   Document: 19   Date Filed: 07/11/2024   Page: 41

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | 7/22/19<br>Julie D. Scott<br>NOTARY PUBLIC - State of Kansas<br>JULIE D. SCOTT<br>My Appt Expires March 31, 2022<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT |
| 7/22/2019<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

2019 JUL 23   PM 4: 10

McKee Law, L.L.C., 222 South Cherry Street ■ Olathe, Kansas 66061
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Kenya Watkins**<br>**1708 Pinecrest**<br>**Wichita, KS 67208** | From: **Kansas City Area Office**<br>**Gateway Tower II**<br>**400 State Avenue, Suite 905**<br>**Kansas City, KS 66101** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **563-2019-02638** | **Stephanie A. Williams,**<br>**Investigator** | **(913) 340-8832** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

For: **Natascha Deguire,**
**Area Office Director**

*(Date Issued)*

cc: **Myndee M. Lee**
**General Counsel**
**Lee Law LLC**
**7381 W 133rd St., Suite 209**
**Overland Park, KS 66213**

**Aaron C. McKee**
**MCKEE LAW LLC**
**222 South Cherry Street**
**Olathe, KS 66061**

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

EEOC FORM 131-A (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| | **Kenya Watkins** |
| **GENESH INC. D/B/A BURGER KING**<br>**8831 Long St.**<br>**Lenexa, KS 66215** | THIS PERSON *(check one or both)*<br><br>[X] Claims To Be Aggrieved<br><br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**28D-2016-00190** |
| | FEPA CHARGE NO.<br>**38411-16** |

**NOTICE OF CHARGE OF DISCRIMINATION** IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See the enclosed for additional information)*

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act (Title VII)      [ ] The Equal Pay Act (EPA)      [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)      [ ] The Genetic Information Nondiscrimination Act (GINA)

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____ .
*(FEP Agency)*

[X] The    **Kansas Human Rights Commission**      and sent to EEOC for dual filing purposes.
*(FEP Agency)*

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII, ADA or GINA charge) to investigate this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC. This likelihood is increased by your active cooperation with the Agency.

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s):  Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] Race   [X] Color   [X] Sex   [ ] Religion   [X] National Origin   [ ] Age   [ ] Disability   [X] Retaliation   [ ] Genetic Information   [ ] Other

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **January 25, 2016** | **James R. Neely, JR,**<br>**Director** | |

40

# STATE OF KANSAS
# KANSAS HUMAN RIGHTS COMMISSION

**DOCKET NO.**    38411-16

On the complaint of:

Kenya Watkins                                    **Complainant,**

vs.

GENESH INC. D/B/A BURGER KING                    **Respondents and their
                                                  representatives.**

I, Kenya Watkins, residing at 1708 Pinecrest, Wichita, Kansas, 67208, United States charge Genesh Inc. d/b/a Burger King, and its representatives, whose principal place of business address is 8831 Long Street, Lenexa, Kansas, 66215. Ms. Watkins' place of employment was the Burger King restaurant located at 528 N. Oliver, Wichita, Kansas 67208.

[X] The Kansas Act Against Discrimination (Chapter 44, Art. 10, K.S.A.) and specifically within the meaning of subsection 1009(a) of Section 44 of said Act, because of my:

| | | | |
|---|---|---|---|
| (X) RACE | (X) SEX | (X) ANCESTRY | (X) RETALIATION |
| ( ) RELIGION | ( ) NATIONAL ORIGIN | ( ) DISABILITY | ( ) FAMILIAL STATUS |
| (X) COLOR | ( ) GENETIC INFORMATION | | |

[ ] The Kansas Age Discrimination in Employment Act (Chapter 44, Art. 11, K.S.A.) and specifically within the meaning of subsection of Section of said Act, because of my AGE.

Alleged Date of Incident: I was terminated on or about August 23, 2015. I also specifically allege that the incidents were continuing in nature throughout my employment.

The aforesaid charges are based on the following facts:

I.     I believe that the respondent discriminated and retaliated against me due to, among other things, the following:

I believe that the Respondent's behavior was in violation of, including but not limited to, the Kansas Act Against Discrimination; Title VII of the Civil Rights Act of 1964; Title VII of the Civil Rights Act of 1991, and other and further local, state and federal laws. I believe I was discriminated against based upon my sex, (female), my race (African-American), my color (black) and my ancestry (African). I believe I was further sexually harassed and forced to work in a hostile work environment based upon my sex, (female), my race (African-American), my color (black) and my ancestry (African). I further believe that I was retaliated against for having openly opposed acts and practices forbidden by local, state and/or federal law by complaining about sexual harassment of myself and others.

II.    The particulars are as follows:

I am a 39 year old woman. I am African American. I am black. My ancestors are from Africa. Between August 14, 2014 and August 23, 2015, I was employed by the respondent as a cashier/crew member. I was paid $7.50 per hour.

McKee Law, L.L.C., 13470 Arapaho Drive ■ Suite 170 ■ Olathe, Kansas 66062
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

# STATE OF KANSAS
# KANSAS HUMAN RIGHTS COMMISSION

### DOCKET NO.    38411-16

I was repeatedly sexually harassed by the general manager of my store, Michael Jackson. The harassment took place throughout my employment with the respondent. I am a single mother with seven (7) children. I could not afford to lose my job so I was forced to endure the harassment until I could no longer handle it and reported him to the corporate office in July 2015. ·

When I interviewed for the position, I was advised by Mr. Jackson that based on my application and experience, I was a candidate for a managerial position.

During my employment with respondent, Mr. Jackson would assign me tasks and job responsibilities that were near him that gave him immediate access to me. Mr. Jackson began to verbally and physically harass me. During my employment, Mr. Jackson did the following things:

He would proposition me for sex, and touched my behind and my vagina on multiple occasions. Mr. Jackson asked me to come to his house more than one time to have sex with him. I rejected all of Mr. Jackson's advances.

Although I completed all of the required computer testing necessary to be considered for a managerial position, Mr. Jackson stated that he was the decision maker for such a position, and I would not be promoted if I did not agree to perform sexual favors for him. Mr. Jackson would touch my behind or my vagina, and then rub his penis and ask when he was "going to get some". He also made comments such as I made him "so horny". Mr. Jackson would come to work without his belt on, his pants sagging and try to make me go into the back room and have sex with him.

I refused every time, and he would laugh and put his belt on.

Further, Mr. Jackson would force me into the back office, touch my vagina and act like he was smelling his hand for the rest of my shift.

Further, on several occasions when I would work at the drive-thru window, Mr. Jackson would stand behind me and pretend to have sex with me from behind.

On one occasion, Mr. Jackson tried to force me into the backroom and into the freezer so that he could try to have sex with me.

In order to get away from Mr. Jackson, I went outside to clean up the parking lot. Mr. Jackson leaned out of the drive-thru window and said "fuck this parking lot, come inside and let me play around in that pussy".

In or about July 2015, I complained to the corporate office regarding the sexual harassment. I made a written and verbal complaint.

On or about July 26, 2015, Mr. Jackson physically tried to have sex with me, and I called 911 to report the assault.

# STATE OF KANSAS
# KANSAS HUMAN RIGHTS COMMISSION

38411-16

### DOCKET NO.

On or about July 28, 2015, I met with corporate representatives and was advised that I would no longer have to work with Mr. Jackson because the general manager was being replaced.

On information and belief, after the meeting with corporate, Mr. Jackson attempted to change my schedule in order to still work with me.

Respondent further cut the number of hours that I normally worked.

On or about Sunday, August 22, 2015, I worked my shift as usual. The schedule for the next week was not posted by the time my shift was over.

On or about Monday, August 23, 2015, I called in to get my schedule and found out that I was scheduled for Monday, August 23, 2015. At that time, I was told that I was terminated for a no call/no show for my absence that day.

I had a satisfactory employment record with the respondent.

III.    I believe that the respondent discriminated and/or retaliated against me by taking adverse employment action against me including, but not limited to, the following:

1.    Refusing to allow me to continue my employment as a when I was able to perform the essential functions of the job;
2.    Refusing to allow me to continue my employment with the respondent when I was qualified and available;
3.    For allowing its managers and employees to discriminate and retaliate against me;
4.    Refusing to take any action to prevent its employees from further discrimination based upon my sex, my race, my color and my ancestry and from creating a hostile work environment;
5.    For refusing to put me back on the schedule;
6.    Upon information and belief, for opposing my unemployment;
7.    For refusing to provide me with available hours; and,
8.    For terminating my employment.

IV.    On information and belief, based upon my experiences with the respondent, I believe that respondent knew, or should have known, of the behavior of its managers and employees and it failed to take any action.

V.    On information and belief, I further believe that the respondent has engaged in a pattern or practice of discrimination and retaliation against individuals that are female.

VI.    I believe that the actions of the respondent were discriminatory and retaliatory. My job was as a cashier/crew member. I had a satisfactory employment record with the respondent.

VII.    Upon information and believe, I believe that the Respondent opposed my unemployment claim to retaliate against me because it knew that I had complained of unlawful behavior.

McKee Law, L.L.C., 13470 Arapaho Drive ■ Suite 170 ■ Olathe, Kansas 66062
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

Page 3 of 4

# STATE OF KANSAS
# KANSAS HUMAN RIGHTS COMMISSION

### DOCKET NO.

38411-16

VIII.    I further believe that the respondent created a hostile work environment to discriminate and to retaliate against me.

IX.    I further believe that respondent's behavior was a pattern and practice of discrimination and retaliation.

I have not commenced any action, civil or criminal, based upon the grievance set forth above.

STATE OF KANSAS              )
                            )ss:
COUNTY OF JOHNSON            )

Kenya Watkins

Kenya Watkins, being duly sworn, deposes and says that: that he or she is the Complainant herein; that or her she has read the foregoing complaint and knows the contents thereof; that the same is true of his or her own knowledge except as to the matters therein stated on information and belief; that as to those matters he or she believes the same to be true. Subscribed and sworn to before me this January _____, 2016.

Kenya Watkins

_____
(Signature of Notary Public)

MY COMMISSION EXPIRES:

11 - 25-17

EULA WEST
Notary Public - State of Kansas
My Appt. Expires

RECEIVED

JAN 25 2015

KANSAS HUMAN
RIGHTS COMMISSION

McKee Law, L.L.C., 13470 Arapaho Drive ■ Suite 170 ■ Olathe, Kansas 66062
Phone: (913) 768-6400 ■ Fax: (913) 768-6420

Page 4 of 4

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**St. Louis District Office**
1222 Spruce St, Rm 8 100
St Louis, MO 63103
(314) 798-1960
Website: www.eeoc.gov

## CONCILIATION FAILURE AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/26/2022

**To:** Ms. Kenya Watkins
1708 Pinecrest
Wichita, KS 67208

Charge No: 28D-2016-00190

EEOC Representative and email:     Joseph Wilson
State, Local & Tribal Program Manager
joseph.wilson@eeoc.gov

---

### CONCILIATION FAILURE OF CHARGE

To the person aggrieved: This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:David Davis
04/26/2022
David Davis
Acting District Director

**Cc:**
Myndee M Lee
LEE LAW, LLC
P.O. Box 26054
Overland Park, KS 66225

Aaron Mc Kee
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, KS 66061


Please retain this notice for your records.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KENYA WATKINS,

      Plaintiff,

      v.

GENESH, INC.,

      Defendant.

Case No. 2:19-CV-2486-JAR-GEB

### MEMORANDUM & ORDER

Plaintiff Kenya Watkins ("Watkins") filed suit against Defendant Genesh, Inc., d/b/a Burger King ("Burger King"), asserting claims of race discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981. Defendant has filed a Motion to Dismiss (Doc. 41) asserting that Watkins fails to state a claim. The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court grants Defendant's motion.

## I.    Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[1] and must include "enough facts to state a claim to relief that is plausible on its face."[2] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[2] *Id.* at 570.

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

more than "a sheer possibility."[4]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the Court "must take all of the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## II.    Factual Allegations

The following material facts are alleged in the Complaint.  Watkins, an African American female, worked for Burger King, as a cashier/crew member between August 14, 2014 and August 23, 2015.  Watkins was paid $7.50 an hour.  During her interview, the General Manager of the store, Michael Jackson, told her she was a candidate for a managerial position.

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* at 678–79.

[8] *Id.* at 679.

[9] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

After hiring Watkins, Jackson assigned her tasks and responsibilities that put her in close proximity to him, and repeatedly verbally and physically harassed her.  On multiple occasions, he attempted to touch Watkins' behind and vagina.  Jackson asked Watkins to come to his house for sex, and he told Watkins that she would not be promoted if she did not have sex with him.  Jackson would work without his belt on and his pants sagging.  He would rub his penis and ask Watkins when he was "going to get some."[10]  Jackson repeatedly asked Watkins for sex and tried to touch her.

On or about July 26, 2015, Jackson physically tried to have sex with Watkins.  On this same date, Watkins called 911 to report the incident.

On or about July 27, 2015, Jackson forced Watkins into the backroom freezer and again tried to have sex with her.  On this same date, Jackson yelled lewd comments to Watkins while she was cleaning the parking lot.  And on the same date, Watkins complained verbally, and in writing, to Burger King's corporate office about Jackson's sexual harassment and hostile work environment.

On or about July 28, 2015, Watkins met with corporate representatives who stated that she would no longer have to work with Jackson. Watkins was also advised that Jackson was being replaced.

After Watkins complained to police and corporate headquarters, her hours were reduced.  On August 22, 2015, Watkins worked her shift as scheduled.  The schedule for the next week had not been posted by the end of her shift.  On August 23, 2015, Watkins called Burger King and asked for her schedule for the week.  Burger King informed her that she was scheduled for that day and that she was terminated for being a no-show/no-call.

---

[10] Doc. 38 at 10, ¶ 83.

Watkins alleges that Burger King does not treat its male or Caucasian employees in the same manner as it treats its female African American employees. Watkins claims that in the United States, African American women have been negatively stereotyped as aggressive and hyper-sexual. Watkins also asserts that the popular culture in the United States portrays black women as sexual deviants and sexual commodities. In addition, Watkins asserts that studies show that white women are not targeted for sexual harassment as much as Black and Latina women are.

In Watkins' Amended Complaint, she includes allegations regarding five other female employees who were sexually harassed by a district manager, general manager, or shift manager and made complaints about this behavior to the Kansas Human Rights Commission ("KHRC"), the Equal Employment Opportunity Commission ("EEOC"), or Burger King's corporate offices. Three of the employees are Hispanic. Two of the employees are African American. These instances of sexual harassment occurred from the end of 2013 through early 2016 and included instances of touching female employees and propositioning certain of these employees for sex.

Watkins filed her Complaint on August 19, 2019. Burger King filed a Motion for Judgment on the Pleadings in April 2020, and Watkins requested leave to file an Amended Complaint. After Watkins was granted leave, Watkins filed her Amended Complaint in October. Burger King has again filed a Motion to Dismiss.

## III. Discussion

Burger King argues that Watkins fails to state race discrimination and hostile environment/harassment claims under 42 U.S.C. § 1981.[11] A race discrimination claim brought

---

[11] Burger King also asserts that Watkins fails to allege a retaliation claim. Watkins has now withdrawn this claim, and the Court therefore does not address it.

under § 1981 requires "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."[12]  In the context of § 1981 claims, "a plaintiff bears the burden of showing that race was a but-for cause of its injury."[13]  This but-for requirement is different than Title VII's "motivating factor" causation standard.[14]  Furthermore, a plaintiff must plausibly allege facts to support this "but for" standard at the outset of the lawsuit.[15]  Thus, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."[16]

In this case, Watkins alleges numerous instances of sexual comments, sexual touching, and behavior by her manager towards her based on her sex.  She alleges that she made a complaint to the police that her manager attempted to physically have sex with her.  Watkins also alleges that she complained of the manager's sexual harassment to the corporate office.

The issue, however, is whether Watkins adequately alleges a claim for race discrimination under § 1981.  Other than Watkins stating that she is African American, there are no factual allegations regarding Burger King's treatment of her based on her race.  Watkins includes conclusory allegations about perceived racial and sexual stereotypes in the United States, but she does not allege any facts that plausibly support a claim for race discrimination in this case.

---

[12] *Hampton v. Dillard Dep't Stores, Inc*., 247 F.3d 1091, 1102 (10th Cir. 2001) (citations omitted).

[13] *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, --- U.S. ---, 140 S. Ct. 1009, 1014 (2020).

[14] *Id.* at 1017–19 (discussing the differences between Title VII's and § 1981's history and causation standards).

[15] *Id.* at 1014, 1019.

[16] *Id.* at 1019.

Watkins asserts that there is a pattern of a racial harassment through the sexual harassment and directs the Court to *Doe v. Matthew 25, Inc.*, a case from the Middle District of Tennessee.[17]  In that case, the court found that the plaintiff plausibly alleged that unwanted sexual comments were the avenue for racial discrimination/harassment under § 1981.[18]  In *Doe*, however, the defendant made racial remarks to the plaintiff.  Specifically, the defendant noted that the plaintiff reminded him of a black woman he used to date and described sexual acts with the black woman.[19]  The court noted that these race-based sexual comments were central to the plaintiff's race discrimination/harassment claim.[20]

Here, there are no allegations of race-based remarks directed towards Watkins, sexual in nature or otherwise.  To the extent that Watkins includes harassment allegations about five other employees, two of whom were African American and three of whom were Hispanic, none of these factual allegations relate to discriminatory behavior on the basis of race.  Instead, these allegations relate to sexual discrimination and harassment.   In sum, there are no plausible allegations that but for Watkins' race, she would not have been sexually harassed.

In addition, to establish a hostile work environment claim under § 1981, a plaintiff must show that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was

---

[17] 322 F. Supp. 3d 843 (M.D. Tenn. 2018).

[18] *Id.* at 856.

[19] *Id.* at 847, 856.

[20] *Id.* at 856 n. 3 (stating that the plaintiff's "race appears to have been central to her receiving [the defendant's] sexual attention in the first place.").

racial or stemmed from racial animus."[21]   A showing of pervasiveness requires "more than a few isolated incidents of racial enmity."[22]

Here, Watkins' allegations do not plausibly support that the harassment was racial or stemmed from racial animosity.  There are simply no allegations of racial harassment.  Instead, as noted above, the remarks and behavior directed toward Watkins were sexual in nature.  Indeed, from the allegations, it appears that Watkins specifically complained about sexual harassment to both the police and corporate headquarters and perceived the harassment to be sexually motivated.  In addition, Watkins' allegations about the treatment of other employees also relate to sexual harassment.  There are no facts related to discriminatory behavior or harassment based on race.  Thus, Watkins fails to adequately allege a racially hostile work environment.

In sum, Watkins more than adequately sets forth a claim for sexual discrimination and/or a hostile work environment on the basis of sex.[23]   Watkins, however, brings her claim under § 1981 which prohibits only racial discrimination.  Watkins fails to adequately allege a claim for race discrimination or hostile work environment under § 1981.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 41) is **granted**, and this case is dismissed with prejudice.

**IT IS SO ORDERED.**

---

[21] *Witt v. Roadway Exp.*, 136 F. 3d 1424, 1432 (10th Cir. 1998) (citing *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).

[22] *Bolden*, 43 F.3d at 551 (citation omitted).

[23] The Court notes that Watkins stated in her Motion for Leave to Amend the Complaint, filed June 15, 2020, that she has charges pending with the EEOC.  Doc. 24 at 2.  She asserts that a right to sue letter was issued but then rescinded, and that as a result, she has been unable to file her Title VII claims.  *Id.*  The Court will not delay ruling on Burger King's motion to dismiss in this § 1981 case, which has been pending since August 19, 2019.  Once the KHRC/EEOC's proceedings conclude, Watkins can file her claims for sexual discrimination and/or harassment under Title VII.

Dated: April 2, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE